USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 1/31/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

VICTOR EBERT; PATRICIA STEINMETZ; PETER    :
CALCHERA; and JOHN FENNELL,    :
   :
          Plaintiffs,    :
   :
  - against -    :    **<u>OPINION AND ORDER</u>**
   :    11 Civ. 4102 (ER)
HOLIDAY INN, FISHKILL, NEW YORK; NOWAB    :
HOTELS GROUP, INC.; BNG HOSPITALITIES, INC.;    :
BUSHRA JAVAID; and ASIF JAVAID,    :
   :
          Defendants.    :

-----------------------------------------------------------------------x

Ramos, D.J.:

     Plaintiffs Victor Ebert ("Ebert"), Patricia Steinmetz ("Steinmetz"), Peter Calchera

("Calchera"), and John Fennell ("Fennell") (collectively, "Plaintiffs") commenced this action

against Defendants Holiday Inn, Fishkill, New York ("Holiday Inn"), Nowab Hotels Group, Inc.

("Nowab"), BNG Hospitalities, Inc. ("BNG"), Bushra Javaid ("Mrs. Javaid") and Asif Javaid

("Mr. Javaid") (collectively, "Defendants") stating claims under the Fair Labor Standards Act

("FLSA"), the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), and the New

York Labor Law ("NYLL"), as well as a state law claim for breach of contract.  Currently

pending before the Court is Plaintiffs' motion for summary judgment pursuant to Fed. R. Civ. P.

56.[1]  Doc. 12.  For the reasons set forth below, Plaintiffs' motion is GRANTED in part and

DENIED in part.

---

[1] The Court notes that Defendants purport to cross-move for summary judgment in response to Plaintiffs' motion, however, Defendants failed to comply with this Court's Individual Practices requiring that prior to filing any motion, the party desiring to make a motion request a pre-motion conference with the Court by submitting a letter to Chambers setting forth the basis for the anticipated motion.  Individual Practices Rule 2A(ii).  In fact, instead of informing the Court of Defendants' desire to cross-move for summary judgment in response to Plaintiffs' request for a pre-motion conference on their anticipated summary judgment motion, Defendants responded by objecting to "Plaintiffs' claim that summary judgment is appropriate," noting that "there are many significant and material issues of fact relevant to defendants' alleged liability which preclude summary judgment."  Mar. 20, 2013 Friedman Letter. At the March 27, 2013 pre-motion conference, the Court granted *Plaintiffs* leave to file their proposed motion for

## I.     Local Rule 56.1

Under Rule 56.1 of the Local Rules of the United States District Courts for the Southern

and Eastern Districts of New York ("Local Rule 56.1"), a party moving for summary judgment

must submit a "separate, short and concise statement, in numbered paragraphs, of the material

facts as to which the moving party contends there is no genuine issue to be tried."  Local R.

56.1(a).  In answering a motion for summary judgment, litigants in this District are required to

specifically respond to the assertion of each purported undisputed fact by the movant and, if

controverting any such fact, to support its position by citing to admissible evidence in the

record.  Local R. 56.1(b), (d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible

evidence in the record in supporting or controverting a purported material fact).  My Individual

Practices further require the party opposing a motion for summary judgment to reproduce each

entry in the moving party's Rule 56.1 Statement and set out her response directly beneath it.  *See*

Individual Practices Rule 2(C)(i).  These rules—simple to understand and apply—are designed

to assist the Court by narrowing the scope of the issues to be adjudicated and identifying the

facts relevant and admissible to that determination.  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d

62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of

summary judgment motions by freeing district courts from the need to hunt through voluminous

records without guidance from the parties.").

Here, Plaintiffs properly filed and served a Statement of Material Facts pursuant to Local

Rule 56.1 ("Plaintiffs' 56.1 Statement").  Doc. 14.  Defendants, on the other hand, failed to file

*any* response to Plaintiffs' 56.1 Statement, as they were required to do by both the Local Rules

---

summary judgment.  *See* Mar. 27, 2013 Minute Entry.  In light of Defendants' failure to abide by this Court's
Individual Practices, the Court declines to consider Defendants' cross-motion for summary judgment and treats
Defendants' submission only as an opposition to Plaintiffs' summary judgment motion.

and this Court's Individual Practices.  Instead, Defendants filed affidavits of Defendant Mr.

Javaid ("Javaid Aff.") and Non-Party Donald Sagaria ("Sagaria Aff.") which, according to

Defendants' Memorandum of Law, purport to set forth "the undisputed facts" of this case.

Defs.' Mem. L. Opp. at 1.  Additionally, unlike the usual attorney affirmations which merely

attach copies of documents alleged to be relevant and admissible, and identify those documents

for the Court, Defendants' counsel submitted an affirmation which includes legal arguments and

factual assertions purportedly based on counsel's "personal knowledge and belief."  Affirmation

of Ronald K. Friedman, Esq. ("Friedman Aff.") (Doc. 17-3).  The affirmation is patently

improper in that counsel could not possibly have personal knowledge of the matters discussed, as

evidenced by the fact that the affirmation actually contains citations to the record (*see, e.g.*,

Friedman Aff. ¶¶ 5, 6, 9).  Moreover, Defendants' five-page Memorandum of Law in Opposition

to Plaintiffs' Motion for Summary Judgment in no way serves to rectify Defendants' failure to

file a response to Plaintiffs' 56.1 Statement.  Although Defendants' brief contains some factual

arguments which could conceivably have raised a genuine issue of material fact, it does not

contain *one single* citation to the record.

Pursuant to Local Rule 56.1(c), each factual statement set forth in the moving party's

Rule 56.1 Statement that is not "specifically controverted by a correspondingly numbered

paragraph in the statement required to be served by the opposing party" will "be deemed to be

admitted for purposes of the motion."  Local R. 56.1(c); *see also T.Y. v. N.Y. City Dep't of

Educ.,* 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1

statement permits the court to conclude that the facts asserted in the statement are uncontested

and admissible.").  Accordingly, in light of Defendants' brazen failure to comply with their

obligations under the Local Rules, all of the statements in Plaintiffs' Rule 56.1 Statement that are

supported by admissible evidence in the record have been deemed admitted for purposes of this

motion.  Additionally, to the extent that the statements in the Javaid and Sagaria Affidavits are

not disputed by Plaintiffs or contradicted by other evidence in the record or by the individuals'

own deposition testimony, the Court will consider them in resolving the motions as well.

## II.   Factual Background

### a.   Management of the Holiday Inn

Mr. Javaid owns and operates several hotels and hotel management companies in New

York.  Specifically, Mr. Javaid is the sole owner of Landbrook, Inc. ("Landbrook"), which

owned Defendant Holiday Inn at the time that Plaintiffs' claims arose.  Declaration of Todd J.

Krakower ("Krakower Decl.") (Doc. 13), Ex. F (Mr. Javaid Dep. Tr.) at 28:4-25; *see also* Javaid

Aff. ¶ 2.  At all times relevant to Plaintiffs' action, Mr. Javaid also owned and operated

Defendant BNG, a hotel management company.  Krakower Decl., Exs. E (Defs.' Responses to

Pls.' First Set of Interrogatories) at No. 10; F at 30:22-24.

At all relevant times, Mr. Javaid was also the sole owner of Defendant Nowab, a hotel

management company that managed the Econo Lodge in West Point, New York, a motel that

was owned by Mrs. Javaid, Mr. Javaid's wife, through Wabno Hospitalities, Inc. ("Wabno").

Krakower Decl., Exs. E at No. 9; F at 6:2-22, 41:11-42:2, 53:18-54:21.  Wabno also owned a

hotel called Knights Inn.  Krakower Decl., Ex. F at 6:7-7:17.

From late 2008 or early 2009 through July 2010, third-party management company Oak

Hotels Management, Inc. ("Oak Hotels") managed the Holiday Inn.  Krakower Decl., Ex. F at

33:2-17.  In the spring of 2010, Mr. Javaid began having discussions with non-party Don

Sagaria—the president and executive officer of a management company called Fisher Hotel

Groups, Inc. ("Fisher")—regarding the possibility of Fisher replacing Oak Hotels as manager of

the Holiday Inn.  Javaid Aff. ¶ 4; Sagaria Aff. ¶¶ 2-4.  At the time, Fisher Hotels was the

manager of the Thayer Hotel in West Point, New York.  Krakower Decl., Ex. F at 38:10-21;

Sagaria Aff. ¶ 6.  As a result of these discussions, Sagaria agreed to provide hotel management

services to Landbrook with respect to the Holiday Inn beginning on July 1, 2010, and to staff the

management team.  Javaid Aff. ¶ 5; *see also* Sagaria Aff. ¶ 5; Krakower Decl., Ex. F at 37:19-

39:11.

### b.  Plaintiffs' Employment with BNG

In July and August 2010, Plaintiffs all left their employment at the Thayer Hotel to work

for BNG.  Krakower Decl., Ex. F. at 43:14-44:11.  Plaintiffs each signed individual three-year

Contracts of Employment (the "Employment Contracts") with BNG, which tasked the Plaintiffs

with "perform[ing] necessary tasks to increase the revenues and profitability of BNG properties,"

and which were signed by Plaintiffs as the "employee[s]" and by Mr. Javaid as "BNG

Employer."  Krakower Decl., Exs. J, K, L, M.  The contracts are all printed on Holiday Inn

letterhead and state that they are between "Holiday Inn Fishkill (employer) and [Plaintiff]

(employee)," and that they are "non cancellable for three (3) years except for cause or

misconduct [and] . . . shall be binding on employer's successors and heirs."  *Id.*

Mr. Javaid testified that he was not involved in the negotiations of the Employment

Contracts and that, rather, Sagaria negotiated all of the terms of Plaintiffs' compensation and

benefits.  Krakower Decl., Ex. F at 60:4-7, 60:23-61:5, 62:18-24; *see also* Sagaria Aff. ¶ 6.  It is

undisputed, however, that Plaintiffs were employees of Defendant BNG at all relevant times.

Javaid Aff. ¶¶ 6, 9; Sagaria Aff. ¶¶ 5, 10.

Plaintiffs all worked for BNG on a full-time basis from July or August 2010 through

December 2010, when their employment was terminated.  Krakower Decl., Ex. E at Nos. 1-4.

According to Plaintiffs, during the course of their employment, they performed services for all three hotels with which Mr. Javaid was affiliated—the Holiday Inn, the Econo Lodge, and the Knights Inn.

Specifically, Plaintiff Ebert worked as a bookkeeper, Plaintiff Steinmetz worked as a food and beverage distributor, and Plaintiff Fennell worked as a regional director of sales, and they all performed physical services for all three hotels in their respective roles.  Krakower Decl., Exs. E at Nos. 1, 2, 4.; N (Ebert Dep. Tr.) at 19:20-20:13; O (Steinmetz Dep. Tr.) at 8:6-22; Q (Fennell Dep. Tr.) at 32:22-33:4.  Plaintiff Calchera worked as an executive chef for BNG and, in that role, performed services for all three hotels, including purchasing food and writing menus, but only physically worked at the Holiday Inn and Knights Inn.  Krakower Decl., Ex. P (Calchera Dep. Tr.) at 13:17-14:12, 15:8-18, 17:18-18:5; *see also* Krakower Decl., Ex. F at 70:7-14.

Mr. Javaid testified that when Plaintiffs Ebert, Steinmetz and Fennell were hired, it was his intention that in addition to working at the Holiday Inn, they would also work at the Econo Lodge and the Knights Inn.  Krakower Decl., Ex. F at 50:13-23, 54:22-55:9, 63:12-19, 67:21-68:4.  With respect to Plaintiff Calchera, Mr. Javaid intended for him to work only at the Knights Inn in addition to the Holiday Inn.  *Id.* at 70:7-14.  However, according to Mr. Javaid, it "was always the parties' understanding that the lynchpin of the plaintiffs' employment was the Holiday Inn," as the two other properties were small motels that could have been self-operated and managed, as they had been for a number of years prior to July 2010.  Javaid Aff. ¶ 12.

### c.  Plaintiffs' Termination from BNG

On December 3, 2010, BNG employees were removed from the premises at the Holiday Inn when the mortgage lender took control of the property.  Specifically, at the time that

Plaintiffs began working for BNG, the Holiday Inn was subject to a first mortgage lien (the "Mortgage") with a principal balance of approximately $12 million, which was held by a company called Vamoz, Ltd. ("Vamoz" or "the Lender"). Javaid Aff. ¶ 13. The Mortgage was the subject of a Forbearance Agreement which provided that Landbrook would pay certain monthly amounts to Vamoz, and that if the payments were not made on time, Vamoz had the right to foreclose on the property. *Id.* To secure Landbrook's obligations under the Forbearance Agreement, Landbrook delivered to Vamoz's attorney a fully executed Deed in Lieu of Foreclosure (the "Deed"), which was held in escrow by Vamoz's attorney. *Id.* ¶ 14. In the event of a default by Landbrook, and after 30 days written notice, the escrow agent was authorized to release the Deed and record it with the Dutchess County Clerk's Office. *Id.*

Mr. Javaid contends that although Landbrook was not in default under the terms of the Forbearance Agreement as of July 1, 2010, it nevertheless received a written notice of default from the Lender, dated July 15, 2010, notifying Landbrook that it was in default and that it had 30 days to cure the default. Javaid Aff. ¶ 15. Accordingly, over the next 30-day period, Landbrook paid to Vamoz the aggregate sum of $100,000, thereby curing the purported default in its entirety. *Id.* Over the next five months, Sagaria's management team, including the Plaintiffs, operated the day-to-day activities of the Holiday Inn. *Id.* ¶ 16. During that time, Landbrook continued to comply with the terms of the Forbearance Agreement and, to Mr. Javaid's knowledge and belief, was in compliance with the Agreement at all times after July 18, 2010. *Id.* ¶ 16.

Thereafter, on December 1, 2010, Mr. Javaid met with Iqbal Mozzawalla, the owner of Vamoz, to discuss a possible modification of the Forbearance Agreement. *Id.* ¶ 17. The parties were unable to come to an agreement, however, and in accordance with the Forbearance

Agreement, Mozawalla instructed Vamoz's attorney to immediately release from escrow the executed Deed and record it with the Dutchess County Clerk. *Id.* ¶¶ 17-18. After receiving a copy of the Deed on December 3, 2010, Mozzawalla contacted the Fishkill Police Department, who directed BNG management personnel at the Holiday Inn to immediately vacate the premises, at which point the Lender immediately took occupancy and control of the hotel and its operation. *Id.* ¶¶ 19-20. Since the Lender's actions on December 3, 2010, Defendants have not conducted any further business at the Holiday Inn. *Id.* ¶ 21.

Plaintiff Ebert testified that after BNG was removed from the Holiday Inn, he continued to work at the Knights Inn and the Econo Lodge for a "couple of weeks" before his employment was terminated. Krakower Decl., Ex. N at 55:12-20. He admits, however, that he was paid for all of the services he performed during that period of time. *Id.* at 55:24-56:57:3. Plaintiffs Calchera, Steinmetz and Fennell similarly testified that they continued to work for approximately two weeks after BNG was removed from the Holiday Inn, but that they were not paid for those two weeks of work. Krakower Decl., Exs. O at 20:1-4, 30:13-21; P at 24:10-20; Q at 9:19-10:3, 32:6-16.

Mr. Javaid testified that Sagaria was the individual who terminated the Plaintiffs, and that Mr. Javaid's understanding was that they were terminated because BNG had lost possession of the Holiday Inn. Krakower Decl., Ex. F at 76:22-77:6. According to Mr. Javaid, Plaintiffs were hired to perform managerial services at the Holiday Inn and, to the extent any of them performed services at the Econo Lodge or the Knights Inn, it was only "adjunct to work performed at the Holiday Inn." Javaid Aff. ¶ 22. Accordingly, without the income and revenues generated by the Holiday Inn, it was impossible for BNG to continue to employ Plaintiffs pursuant to their Employment Contracts. *Id.* Moreover, to the extent that any of the Plaintiffs performed any

services after December 3, 2010 at either the Econo Lodge or the Knights Inn, they only performed such services for a period through December 14, 2010 and were compensated for those services. *Id.* ¶¶ 23-24; *see id.* at Ex. F.

### d.  Facts Specific to Individual Plaintiffs' Claims

#### i.  Plaintiff Ebert

Plaintiff Ebert seeks summary judgment on his claim that Defendants failed to pay him overtime rates for hours worked in excess of 40 per week in violation of the FLSA. *See* Pls.' Mem. L. at 13-16.

Ebert testified that his supervisors, Mr. Javaid and non-party Robert Wilson—manager of the Holiday Inn—set his work schedule, which was approximately 50 hours per week. Krakower Decl., Exs. F at 75:24-25; N at 20:14-21:17. Ebert testified that during some weeks, he worked an additional one to four hours from his home, and that he was not required to record his hours in any manner. Krakower Decl., Ex. N at 22:2-7, 23:5-13, 24:8-22. His primary duties as bookkeeper involved preparing reports, handling petty cash, and other data entry as needed. Krakower Decl., Exs. N at 26:13-32:14, 33:20-24, 35:17-36:7; F at 49:21-24 (Mr. Javaid testifying that the nature of the bookkeeper job is to "proof the books" and "prepare some reports for the management"). During his employment at BNG, Ebert signed checks on BNG's accounts, however, he was required to have a cosigner on each check that he signed. Krakower Decl., Ex. N at 37:11-24. Ebert testified that he did not have any employees working under him during the course of his employment at BNG. *Id.* at 57:10-15.

#### ii.  Plaintiff Calchera

During the course of his employment, Plaintiff Calchera received health insurance through BNG. Krakower Decl., Exs. F at 90:10-12; P2 (Calchera Dep. Tr.) at 30:16-31:11, 32:4-

8.  He claims that Defendants violated COBRA by failing to inform him of his rights to COBRA election and continuation of his health benefits upon his termination, and that Defendants have failed to produce "a single document during discovery" demonstrating that they informed Calchera of his rights under COBRA.  *See* Compl. ¶¶ 121-23; Pls.' 56.1 Stmt. ¶ 90.

## III.    Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14,

10

18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

**IV.    Plaintiffs' Summary Judgment Motion**

> **a.   Plaintiffs are Entitled to Summary Judgment on Their Breach of Contract Claim**

Plaintiffs seek summary judgment on the issue of liability with respect to their breach of contract claim.  They argue that Defendants breached Plaintiffs' respective Employment Contracts when Defendants terminated them in December 2010.  Pls.' Mem. L. 11.  Defendants, on the other hand, argue that they should be excused from performance under the agreements, as their loss of ownership and control of the Holiday Inn was an unanticipated event that made it financially impossible for them to continue to comply with the terms of the Employment Contracts.  Defs.' Mem. L. Opp. at 3-4.

Under New York law, the elements of a cause of action for breach of contract are:  (1) the existence of a contract; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages suffered as a result of the breach.  *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (applying New York law).

Here, Plaintiffs argue that the four elements of their breach of contract claim have been satisfied.  First, it is undisputed that each Plaintiff had a valid Employment Contract, which Mr.

Javaid signed on behalf of BNG, Plaintiffs' employer, in July and August 2010.  *See* Krakower

Decl., Exs. J, K, L, M.  Those agreements all stated that they were "non cancellable for three (3)

years except for cause or misconduct," and that they were "binding on employer's successors

and heirs."  *Id.*  It is further undisputed that Plaintiffs performed under the Employment

Contracts by conducting management services for BNG from the inception of their employment

until their termination.  *See* Javaid Aff. ¶ 16.  Plaintiffs argue that Defendants breached the

Employment Contracts when Defendants terminated Plaintiffs without cause in December 2010.

Pls.' Mem. L. at 13.  Finally, Plaintiffs argue that Defendants' termination of Plaintiffs'

employment prior to the expiration of the agreements resulted in substantial lost earnings to

Plaintiffs.  *Id.* at 12.

Defendants, on the other hand, argue that they were excused from performing under the

contracts in light of the Lender having wrongfully taken possession and control of the Holiday

Inn.[2]  Defs.' Mem. L. Opp. at 3.  Although they admit that the excuse of impossibility is

generally "limited to the destruction of the means of performance by an act of God," *id.*, they

argue that their loss of the Holiday Inn was a "complete loss of [] property" and therefore akin to

"a fire or other total casualty."  *Id.* at 3-4 (citing *407 E. 61st Garage, Inc. v. Savoy Fifth Ave.*

*Corp.*, 23 N.Y.2d 275, 281 (N.Y. 1968)).  Accordingly, they argue that they should be excused

from performance under the contracts.  *Id.*

Plaintiffs dispute Defendants' excuse of impossibility on several grounds.  First, they

argue that Defendants admitted that Plaintiffs were hired to work at all three of the hotels with

which Mr. Javaid was associated and, thus, the loss of the Holiday Inn does not relieve

---

[2] Defendants have initiated a lawsuit against the Lender and its attorneys arising from their actions in taking possession and control of the Holiday Inn pursuant to the Forbearance Agreement, which is currently pending in the Dutchess County Supreme Court and is presently scheduled for trial in February 2014.  Javaid Aff. ¶ 20 n.10.

Defendants from their continuing contractual obligations, as there is no dispute that the Econo
Lodge and the Knights Inn continued to operate.  Reply Mem. L. at 4.  Moreover, Plaintiffs
argue that even assuming their employment was limited to the Holiday Inn, Defendants should
not be excused from performance under the contracts, as case law is clear that performance is not
excused "where impossibility or difficulty of performance is occasioned only by financial
hardship, even to the extent of insolvency or bankruptcy."  *Id.* at 5 (citing *407 E. 61st Garage,
Inc.*, 23 N.Y.2d at 281).  Moreover, the defense of impossibility requires a showing that the party
seeking to avoid the contract "took virtually every action within its power to perform its duties
under the contract," which Defendants clearly did not do here.  *Id.* (citing *Health-Chem Corp. v.
Baker*, 915 F.2d 805, 810 (2d Cir. 1990)).

 The Court finds that Defendants' loss of the Holiday Inn does not excuse them from
performance under the Employment Contracts.  Case law is clear that impossibility excuses a
party's performance "under very limited and narrowly defined circumstances."  *Bierer v. Glaze,
Inc.*, No. 05 Civ. 2459 (CPS), 2006 WL 2882569, at *6 (E.D.N.Y. Oct. 6, 2006).  Specifically, a
party's performance may only be excused where the destruction of the subject matter of the
contract or the means of performance makes performance objectively impossible, and where the
impossibility was "produced by an unanticipated event that could not have been foreseen or
guarded against in the contract."  *Id.* (noting that frustration of purpose is limited to instances
where a "virtually cataclysmic, wholly unforeseeable event renders the contract valueless to one
party") (citations omitted).  Moreover, under New York law, changes in market conditions or
economic hardship do not excuse performance.  *Id.* at *7 (citations omitted).

 Here, Mr. Javaid admitted during discovery that pursuant to the Employment Contracts,
he intended for Plaintiffs to work at the Econo Lodge and/or the Knights Inn, in addition to the

Holiday Inn.  Krakower Decl., Ex. F at 50:13-23, 54:22-55:9, 63:12-19, 67:21-68:4, 70:7-14; *see also* Javaid Aff. ¶ 11.  Notwithstanding that the scope of Plaintiffs' employment with BNG included their provision of services to all three of the hotels with which Defendants were affiliated, Defendants argue that they should be excused from performance under the agreements because "[w]ithout the income and revenue generated by the Holiday Inn-Fishkill, it was impossible for BNG to employ and pay the plaintiffs pursuant to their employment contracts." Javaid. Aff. ¶ 22.  However, this merely amounts to an argument that it would be financially difficult for Defendants to comply with their obligations under the Employment Contracts, and case law is clear that economic hardship, "even to the extent of insolvency or bankruptcy," does not excuse performance under a contract.  *407 E. 61st Garage, Inc.*, 23 N.Y.2d at 281. Moreover, Defendants have failed to set forth *any* evidence suggesting that they "took virtually every action within [their] power to perform [their] duties under the contract[s]."  *Health-Chem Corp.*, 915 F.2d at 810.  Rather, the record demonstrates that following their loss of the Holiday Inn, the *only* action Defendants took with respect to Plaintiffs' Employment Contracts was to terminate their employment with BNG.  Krakower Decl., Ex. F at 76:22-77:6; *see also* Javaid Aff. ¶ 22.

To the extent Defendants suggest that their loss of the Holiday Inn was unanticipated because "Landbrook was not in default . . . at the time the employment contracts were made" or because the Lender "wrongfully" took possession of the hotel, that argument is rejected.  Defs.' Mem. L. Opp. at 3.  Mr. Javaid admits that at the time he entered into the Employment Contracts with Plaintiffs, the Holiday Inn was subject to the Mortgage, and that pursuant to the terms of the Forbearance Agreement, the Lender had the right to take control of the Holiday Inn should the Defendants default on the Mortgage.  Javaid Aff. ¶ 13.  In fact, Mr. Javaid first received notice of

14

the purported default on July 15, 2010, at or *before* the time Plaintiffs were hired.  *Id.* ¶ 15.

Accordingly, it was not impossible to foresee that the Lender would exercise its rights under the

Forbearance Agreement and take control of the property.[3]  Moreover, in light of the existence of

the Mortgage and Forbearance Agreement, Defendants could and should have "guarded against"

the risk of their defaulting on the Mortgage in the Employment Contracts.  *See 407 E. 61st*

*Garage, Inc.*, 23 N.Y.2d at 282 ("[I]n view of its admittedly contemporaneous financial

difficulties, [defendant] could [and] should have insisted that the agreement provide for the

anticipated contingency of economic hardship."); *see also Kel Kim Corp. v. Central Mkts.*, 70

N.Y.2d 900, 902 (N.Y. 1987) (holding that the purported "impossibility" "could have been

foreseen and guarded against").

Accordingly, because economic hardship does not excuse performance under a contract

and because Defendants failed to guard against the risk of their losing control of the Holiday Inn

in the Employment Contracts, Defendants have failed to demonstrate their entitlement to the

defense of impossibility.  Plaintiffs' motion for summary judgment on their breach of contract

claim is therefore GRANTED.

**b.  Plaintiff Ebert's Claim for FLSA Overtime Violations**

**i.  Fair Labor Standards Act**

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of

the minimum standard of living necessary for health, efficiency, and general well-being of

workers" and to ensure that employees are fairly compensated.  29 U.S.C. § 202(a).  The statute

requires that employers pay overtime at a rate of not less than one and one-half times the

---

[3] To the extent Defendants claim that they were not in default at the time that the Lender took possession of the hotel, that claim should be raised against the *Lender*, and does not affect Defendants' liability with respect to *the Plaintiffs* under their respective Employment Contracts.

employee's regular rate for hours worked in excess of 40 per week.  *Id.* § 207(a)(1).

The FLSA, however, specifically provides for exemptions that exclude certain employees from its overtime provisions.  Specifically, the FLSA exempts employers from paying overtime to employees employed in a "bona fide executive, administrative, or professional capacity."  *Id.* § 213(a)(1).  Employees whose jobs fall within one of the enumerated exemptions are not entitled to overtime "no matter how many hours they work each week."  *Schwind v. EW & Assocs., Inc.*, 357 F. Supp. 2d 691, 697 (S.D.N.Y. 2005) (citation omitted).

The employer has the burden of proving that the subject employee falls under any of the enumerated exemptions.  *Id.* (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).  As the FLSA is a remedial statute, "its exemptions are construed narrowly against the employer."  *Id.* (quoting *Wright v. Aargo Sec. Servs., Inc.,* No. 99 Civ. 9115 (CSH), 2001 WL 91705, at *2 (S.D.N.Y. Feb. 2, 2001)).  The determination of whether the activities and responsibilities of an employee, once established, exempt him or her from the FLSA's overtime requirements is a "strict question of law."  *Alberti v. Cnty. of Nassau*, 393 F. Supp. 2d 151, 174 (E.D.N.Y. 2005) (citations omitted).  Accordingly, where, in light of undisputed facts in the record, a reasonable fact finder could only find that an employee was not an executive, administrator or professional, a court may hold that as a matter of law, he or she is not an exempt employee under the FLSA. *Id.*

### ii.  Waiver

Here, Plaintiff Ebert moves for summary judgment on his claim for overtime wages under the FLSA.  Defendants argue that Plaintiff is an exempt employee under the FLSA, however, they failed to plead this affirmative defense in their Answer and, rather, first raised it in their opposition to Plaintiffs' summary judgment motion.  Accordingly, Plaintiffs argue that

16

because a claim of exemption under the FLSA is an affirmative defense that must be specifically pleaded or will be deemed waived, Defendants have waived the defense in light of their failure to plead it in their Answer. *Schwind*, 357 F. Supp. 2d at 697.

The general rule in federal courts is that a failure to plead an affirmative defense in a responsive pleading results in a waiver. *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994) (citations omitted). Nevertheless, it is well-established in this Circuit that a district court has the discretion to consider an affirmative defense raised for the first time at the summary judgment stage by construing the request as one to amend the answer, so long as the party opposing the affirmative defense has an adequate opportunity to respond to that defense and has otherwise suffered no prejudice as a result of the late pleading. *See Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also Feeney v. Dunham*, No. 06 Civ. 310 (DJS), 2007 WL 1186046, at *4 (D. Conn. Apr. 18, 2007).

Here, Defendants clearly pursued issues related to Ebert's employment status under the FLSA during discovery, as demonstrated by the questioning posed to Ebert at his deposition concerning his job responsibilities. Moreover, it appears that Plaintiffs anticipated that Defendants would raise the affirmative defense in their opposition papers, as Plaintiffs address Ebert's status as a "non-exempt" employee in their moving papers. *See* Pls.' Mem. L. at 14. Additionally, Plaintiffs had an opportunity to respond to the affirmative defense in their reply papers, and, in fact, spent approximately eight of the twelve pages of briefing addressing the issue. *See* Reply Mem. L. at 6-13. Accordingly, the Court finds that Plaintiffs had an adequate opportunity to address the defense in their reply papers and have not otherwise been prejudiced by the late pleading. The Court will therefore construe Defendants' opposition papers as a request to amend their Answer to plead their proposed affirmative defense, and analyzes the

17

defense below.

### iii.   Executive, Administrative or Professional Capacity Exemption

Defendants appear to argue that Plaintiff was an "administrative employee" and was therefore exempt from the FLSA's overtime requirements.  *See* Defs.' Mem. L. Opp. at 1-2.  The FLSA does not define the terms "executive," "administrative," or "professional" for purposes of the exemption, but directs the Secretary of Labor to do so by regulation.  29 U.S.C. § 213(a)(1). The Secretary's regulations have the force of law and are generally given controlling weight. *Freeman v. Nat'l Broad. Co., Inc.,* 80 F.3d 78, 82 (2d Cir. 1996).

The Secretary has enacted regulations that establish a two-pronged test for determining whether an employee is exempt under Section 213(a)(1) of the FLSA.  *See Krumholz v. Vill. of Northport*, 873 F. Supp. 2d 481, 487 (E.D.N.Y. 2012).  Under the first prong, the employee must be paid on a "salary basis" of at least $455 per week.  *Id.* (citing 29 C.F.R. § 541.200(a)(1)).  An employee is considered to be paid on a "salary basis" if the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount" that is not subject to deductions based on the quality or quantity of the work performed.  *Id.* (citing 29 C.F.R. § 541.602(a)).  Here, it is undisputed that Plaintiff Ebert earned an annual base salary of $39,000, or $750 per week.  *See* Krakower Decl., Ex. J (Ebert Employment Contract).  This salary well exceeds the minimum of $455 per week required for the exemption to apply.   Moreover, Plaintiff was paid every two weeks through a payroll service and there is no indication that his payments were subject to reduction based on variations in the quality or quantity of his work. *See* Krakower Decl., Ex. N at 39:2-40:11.   Accordingly, Plaintiff satisfies the "salary" prong of the test for determining the applicability of the Section 213(a)(1) exemption.

The second prong looks to the employee's "primary duties" in determining whether the

18

employee is exempt.  An exempt "administrative" employee must engage in the following primary duties:  (i) the performance of office or non-manual work directly related to the management or general business operations of the employer; and (ii) the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a)(2)-(3).  With respect to duties "directly related to the management or general business operations" of the employer, the regulations distinguish between employees who "perform work directly related to assisting with the running or servicing of the business" with employees who are engaged in "production," which is not limited to the production of tangible goods.  29 C.F.R. § 541.201(a); *see Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 532-33 (2d Cir. 2009) (holding that a "literal reading of 'production' to require tangible goods has no basis in law or regulation" and that "[w]hat determines whether an [employee] performed production or administrative functions is the nature of her duties, not the physical conditions of her employment").  In *Davis v. J.P. Morgan Chase & Co.*, the Second Circuit held that the plaintiff employees were not employed in an administrative capacity where they performed work that was "primarily functional rather than conceptual," they were "not at the heart of the company's business operations," they had "no involvement in determining the future strategy or direction of the business," and where they did not "perform any other function that in any way related to the business's overall efficiency or mode of operation."  *Davis*, 587 F.3d at 535; *see also Neary v. Met. Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606, 615 (D. Conn. 2007) (holding that plaintiff was not an "administrative employee" where he did not have a "role in advising management or effecting policies that would make the business run more efficiently").

 With respect to the second primary duty, the regulations state that "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible

courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202(a).  The requirement "implies that the employee has authority to make an independent choice, free from immediate direction or supervision."  *Id.* § 541.202(c). Moreover, the regulations state that the "exercise of discretion and independent judgment" does not include "clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work.  An employee who simply tabulates data is not exempt, even if labeled as a 'statistician.'"  *Id.* § 541.202(e).   Finally, an employee does not exercise independent judgment with respect to matters of significance "merely because the employer will experience financial losses if the employee fails to perform the job properly."  *Id.* § 541.202(f).

Here, Plaintiff argues that he is not an exempt administrative employee under the FLSA, as he did not perform work "directly related to the management or general business operations" of BNG or "exercise discretion and independent judgment with respect to matters of significance."  Specifically, Plaintiff notes that he did not (i) supervise any employees; (ii) develop company policies and/or strategies; or (iii) have the authority to bind BNG in any manner.  Pls.' Reply Mem. L. at 10.  Moreover, Plaintiff's tasks were limited to low-level bookkeeping functions.  Specifically, he prepared revenue reports, occupancy percentage reports, and accounts payable reports, none of which required exercising discretion and independent judgment over matters of significance.  *Id.* at 12; *see also* Krakower Decl., Ex. N at 26:13-19. Plaintiff also performed data entry tasks as required, *id.* at 33:20-24, and did not perform higher-level tasks, such as preparing profit and loss statements or balance sheets.  *Id.* at 27:8-9, 28:2-3. Although Plaintiff did handle petty cash, he testified that he was only permitted to give cash to certain employees "at the direction of a supervisor."  *Id.* at 31:11-19.

The Court finds that the undisputed facts clearly demonstrate that Plaintiff was not an exempt "administrative" employee under the FLSA.  As Plaintiff argues, his tasks were limited to low-level bookkeeping functions, none of which required the exercise of discretion and independent judgment.  His primary duties involved preparing standard reports, performing data entry tasks, and managing the disbursement of petty cash at the direction of his supervisors. Although Defendants attempt to characterize Plaintiff's work as high-level and directly related to the management of the business, Defs.' Mem. L. Opp. at 2, the Court finds that Plaintiff's responsibilities were "primarily functional rather than conceptual" and were not "at the heart" of BNG's hotel management operations.  Indeed, Plaintiff's duties are most accurately described as the "tabulation of data," and clearly did not include the performance of any high-level analyses or conclusions directly related to Defendants' policies or business strategies.

Contrary to Defendants' assertions, that Plaintiff was responsible for maintaining BNG's petty cash accounts and was a signatory on BNG's accounts does not change the Court's analysis.  *See* Friedman Aff. at 3.  Plaintiff may have been granted access to some of BNG's accounts, however, that alone does not suggest that he had *any* role in "advising management or effecting policies."  Additionally, with respect to the petty cash, Plaintiff clearly testified that he made disbursements only at the direction of his supervisors, thereby demonstrating that, even assuming  that disbursement of BNG's petty cash constituted a "matter[] of significance," Plaintiff's responsibilities were clearly not "free from immediate direction or supervision." Moreover, the regulations are clear that Plaintiff did not necessarily exercise discretion and independent judgment with matters of significance merely because he was entrusted with a certain amount of cash and because BNG could have experienced financial loss had Plaintiff not

21

adequately performed his duties with respect to the petty cash.[4]  *See* 29 C.F.R. § 541.202(f).

Finally, it is worth noting that with respect to the *professional* employee exemption, the FLSA regulations state that "accounting clerks, bookkeepers, and other employees who normally perform a great deal of routine work generally will not qualify as exempt professionals."  29 C.F.R. § 541.301(e)(5).  Similarly, the Court finds that in light of the "routine" nature of Plaintiff's work here, as well as the undisputed fact that he did not "participate in the running of [BNG's] business" and was merely involved in "the day-to-day carrying out of [BNG's] affairs," *Davis*, 587 F.3d at 535, Plaintiff Ebert does not qualify as an exempt administrative employee under the FLSA.  *See Hendricks v. J.P. Morgan Chase Bank, N.A.*, 677 F. Supp. 2d 544, 559 (D. Conn. 2009) (noting that bookkeepers do not qualify as exempt employees under the administrative exemption); *cf. Krumholz*, 873 F. Supp. 2d at 491-92 (holding that Village Treasurer was exempt administrative employee where she had responsibility for drafting the Village's budget; the authority to open bank accounts and act as sole check signatory for checks under $5,000; supervisory authority over the work of the person in charge of accounts payable and the person in charge of payroll; and the power to decide where to invest the Village's excess money).  Accordingly, as the Court finds that he is not an exempt employee under the FLSA, Plaintiff Ebert's motion for summary judgment on his claim for FLSA overtime violations is GRANTED.

---

[4] That Sagaria intended for Plaintiff to "perform management and administrative services" for BNG at the time that Plaintiff was hired, Sagaria Aff. ¶ 11, is immaterial to the determination of whether Plaintiff's duties and responsibilities qualify him as an exempt administrative employee under the FLSA.  It is neither Plaintiff's job title nor the intended scope of his employment that is determinative; rather, it is "the nature of [his] day-to-day activities that is determinative." *Savage v. UNITE HERE*, No. 05 Civ. 10812 (LTS) (DCF), 2008 WL 1790402, at *8 (S.D.N.Y. Apr. 17, 2008) (citations omitted).

### c. **Plaintiff Calchera's COBRA Claim**

Plaintiff Calchera seeks summary judgment on his claim that Defendants violated COBRA by failing to provide him with notice of his right to continuation of medical coverage following his termination.  29 U.S.C. §§ 1161-1169.

The purpose of COBRA is to allow employees who lose their jobs to continue their medical coverage at approximately the group rate, which is lower than the rate for individual coverage.  *See Local 217, Hotel & Rest. Emp. Union v. MHM, Inc.*, 976 F.2d 805, 809 (2d Cir. 1992).  The statute requires that the plan sponsor of a "group health plan" provide each "qualified beneficiary" who would lose coverage under the plan as a result of a "qualifying event" to elect continuation of coverage under the plan.  29 U.S.C. § 1161(a).  The statute defines "group health plan" as "an employee welfare benefit plan providing medical care to participants or beneficiaries directly or through insurance, reimbursement or otherwise."  *Id.* § 1167(1).  It further defines "qualified beneficiary" as an individual (or that individual's spouse or dependent child) who is provided coverage under a group health plan "by virtue of the performance of services by the individual for one or more persons maintaining the plan."  *Id.* §§ 1167(2)-(3).  Moreover, the statute contains an exception for employers who employed "fewer than 20 employees on a typical business day during the preceding calendar year."  *Id.* § 1161(b).

Plaintiff Calchera contends that he is entitled to summary judgment on his claim under COBRA in light of the fact that Defendants failed to "disclose[] a single document during discovery that demonstrates that [they] informed plaintiff . . . about his rights to COBRA election and continuation of his health care benefits."  Pls.' 56.1 Stmt. ¶ 90; *see also* Pls.' Mem. L. at 18. Indeed, in response to Plaintiffs' summary judgment motion, Defendants appear to admit that no such notice was sent.  Instead, Defendants contend that Plaintiff has failed to demonstrate a

number of facts setting forth his entitlement to notice under the statute, including that he was a "qualified beneficiary," that the health insurance provided to him by BNG was an ERISA-qualified group health insurance plan, that any or all of the Defendants were plan sponsors, and that BNG normally maintained more than 20 employees on any given day.  *See* Defs.' Mem. L. Opp. at 4; Friedman Aff. ¶¶ 17-18.  Plaintiffs failed to rebut or otherwise respond to Defendants' arguments in their reply papers.

Although Defendants assert that Plaintiff has failed to establish his eligibility for continuation of coverage under COBRA, they have utterly failed to set forth *any* case law or evidence in the record to support their apparent contention that they cannot be held liable under COBRA.  Rather, Defendants devote less than half a page of their five-page Memorandum of Law to the issue of their liability under COBRA and suggest, without citation to *any* authority or documentary proof, that they are not subject to COBRA and are therefore entitled to summary judgment on Plaintiff's claim.

Moreover, although Defendants directly disputed Plaintiff's eligibility under COBRA, Plaintiffs failed to even address Defendants' argument in their twelve-page reply brief.  Accordingly, in light of both parties' failure to set forth *any* undisputed material facts from which the Court can determine whether Plaintiff was eligible for continuation of health coverage under COBRA, neither party is entitled to summary judgment on Plaintiff's COBRA claim.

### d.  Plaintiffs' Claim for Unpaid Wages Under the NYLL

Plaintiffs contend that they are entitled to summary judgment on their claim for unpaid wages under the NYLL for the two weeks that they worked following Defendants' removal from the Holiday Inn on December 3, 2010.  In response, Defendants argue that Plaintiffs were, in fact, compensated for their last two weeks of work, and submit copies of checks from BNG to

Plaintiffs, all dated December 14, 2010.  *See* Javaid Aff., Ex. F.  Plaintiffs do not acknowledge Defendants' submission of the checks in their reply papers or otherwise respond to Defendants' contention that they were compensated for their last few weeks of work.[5]

      Notwithstanding Defendants' submission of the checks, the Court finds that material issues of fact exist as to whether Plaintiffs were, in fact, compensated for all of the days for which they performed services for Defendants.  First, although Defendants allege that the checks attached to the Javaid Affidavit are, in fact, paychecks, without any further explanation of or context for the checks, the Court cannot determine, as a matter of law, that the checks were necessarily given to Plaintiffs as compensation for any services provided during the two weeks after December 3, 2010.  Moreover, although Mr. Javaid states in his Affidavit that "to the extent any of the plaintiffs performed any labor or services after December 3, 2010 . . . they only performed such services for a period [] through December 14, 2010," Javaid Aff. ¶ 23, he provides *no* documentary support for this contention.  Indeed, Plaintiffs Calchera, Steinmetz and Fennell all testified that they worked for Defendants for a period of two weeks after December 3, 2010, i.e., until approximately December 17, 2010.  Accordingly, even assuming the December 14, 2010 checks did constitute payment for Plaintiffs' services, it is not clear from the record whether Plaintiffs were compensated for *all* the days that they worked after December 3, 2010.  Accordingly, as material issues of fact exist, Plaintiffs are not entitled to summary judgment on their claim for unpaid wages under the NYLL.

---

[5] The Court notes that although all four Plaintiffs appear to move for summary judgment on the unpaid wages claim, Plaintiff Ebert admitted at his deposition that he was paid for all of the services he performed following BNG's removal from the Holiday Inn on December 3, 2010.  *See* Krakower Decl., Ex. N at 55:24-57:3.

**V.    Conclusion**

For the reasons set forth above, Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part.  Specifically, Plaintiffs are granted summary judgment on their breach of contract claim, and Plaintiff Ebert is granted summary judgment on his FLSA claim. Accordingly, liability against Defendants on those claims is established, and damages remain for determination.  Plaintiffs' motion for summary judgment on their NYLL claim and Plaintiff Calchera's COBRA claim is denied.  The Clerk of the Court is respectfully directed to terminate the motion.  Doc. 12.

The parties are instructed to file their joint pre-trial order no later than Friday, February 28, 2014 and to appear for a pre-trial conference on Tuesday, March 11, 2014 at 11:00 am, at which a final pretrial conference date and trial date will be set.

It is SO ORDERED.

Dated:     January 31, 2014
           New York, New York

_____
Edgardo Ramos, U.S.D.J.

26